State Court of Fulton County
**E-FILED**
24EV004205
5/16/2024 11:47 AM
Donald Talley, Clerk
Civil Division

## IN THE STATE COURT OF FULTON COUNTY

## STATE OF GEORGIA

| | | |
|---|---|---|
| ZANKHANA PATEL and<br>PNP AMUSEMENT GAMES, L.L.C., | ) | |
| | ) | CIVIL ACTION FILE |
| Plaintiffs, | ) | |
| | ) | NO.: _____ |
| vs. | ) | |
| | ) | |
| STEVEN M. KUSHNER, ESQ., | ) | Plaintiffs demand a |
| FELLOWS LaBRIOLA LLP, | ) | trial by jury |
| JOHN DOES (1-5), and XYZ COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COME NOW Plaintiffs Zankhana Patel and PNP Amusement Games, L.L.C. and file this Complaint showing this Honorable Court the following:

1.

Defendant Steven M. Kushner, Esq. ("Kushner") may be served at his residence at 935 Highland Terrace, NE, Atlanta, Fulton County, Georgia 30306. After proper service, Kushner is subject to the jurisdiction of this Court.

2.

Defendant Fellows LaBriola LLP (the "Firm") has its principal place of business at 233 Peachtree Street, NE, Suite 2400, Atlanta, Fulton County, Georgia 30303. The Firm does not maintain a registered agent in the state of Georgia; it may therefore be served through the Georgia Secretary of State. See, O.C.G.A. § 14-9-104.

3.

Alternatively, service may be perfected on the Firm by serving an agent, defined as "one whose position is such as to afford reasonable assurance that he will inform his corporate

principal that such process has been served upon him." <u>Northgate Village Apartments v. Smith</u>, 207 Ga. App. 479, 480 (1993) (citations omitted). Here, the firm may be served through one of its partners.

4.

After proper service, the Firm is subject to the jurisdiction of this Court.

5.

The true names or capacities of the defendants named herein as John Does (1-5) are unknown to Plaintiffs, who therefore sue said defendants by such fictitious names. Plaintiffs will amend the complaint to show said John Does' true names when the same have been ascertained. Plaintiffs allege on information and belief that John Does may also be jointly responsible for the acts or omissions alleged herein.

6.

The true name or capacity of the defendant named herein as XYZ Company is unknown to Plaintiffs, who therefore sue said defendant by a fictitious name. Plaintiffs will amend the complaint to show said defendant's true name when the same has been ascertained. Plaintiffs allege on information and belief that said defendant may in some manner be responsible for the acts or omissions alleged herein.

7.

Venue is proper in this Court pursuant to the provisions of the Constitution of the State of Georgia, Article 6, Section 2, Paragraph 6 in that Kushner is a resident of Fulton County, Georgia and the Firm has its principal place of business in Fulton County, Georgia.

<u>UNDERLYING FACTS</u>

8.

Upon information and belief, at the time of the incidents complained of herein, Kushner was a licensed attorney practicing law in Atlanta, Fulton County, Georgia, with and for the Firm.

9.

Plaintiff Zankhana Patel ("Z. Patel") is the former spouse of Manoj "Ray" Patel ("M. Patel").

10.

M. Patel owns and operates an entity known as Krishna Amusement, Inc. ("Krishna"). Z. Patel has no ownership or stock interest in Krishna.

11.

At all times relevant to this litigation, Z. Patel has been the sole member (owner) of Plaintiff PNP Amusement Games, L.L.C. ("PNP"), owning 100% of the shares in PNP. She also serves as the manager of the entity.

12.

At all times relevant hereto, M. Patel was not a manager of PNP and had no ownership interest in PNP.

13.

At all times relevant hereto, PNP was in the coin-operated amusement games business and held a Master License issued by the Georgia Lottery Corporation allowing PNP to own and lease Coin Operated Amusement Machines ("COAMs").

14.

COAM Master Licenses are renewed on an annual basis.

15.

PNP entered into contracts with various convenience stores that permitted PNP to place its COAMs at locations throughout the state of Georgia. These contracts proved to be lucrative to PNP.

16.

In 2016 and 2017, Z. Patel renewed PNP's COAM Master License.

17.

Z. Patel sought a renewal of PNP's COAM Master License in 2018.

18.

On or about September 13, 2018, the Georgia Lottery Corporation sent a letter to Z. Patel informing her that the Georgia Lottery Corporation had denied PNP's application for a renewed COAM Master License.

19.

The Georgia Lottery Corporation based the denial of PNP's application for a renewed COAM Master License upon an allegation that PNP or Z. Patel had an interest in location licensees, among other things.

20.

On July 9, 2019, the State of Georgia filed a lawsuit against Z. Patel, PNP, M. Patel, Krishna, and several other individual and corporate entities, in which the State alleged the defendants worked together to commit multiple illegal acts of commercial gambling, among other wrongful acts, constituting violations of RICO. State of Georgia v. S & W Amusements,

<u>Inc., et al.</u>, Superior Court of Bibb County, Case No. 19-CV-070909 (the "Lawsuit").  The State sought forfeiture and other relief in the Lawsuit.

21.

When suit was filed, the State of Georgia requested appointment of a temporary receiver. By order dated July 9, 2019, the Court appointed attorney Boniface G. Echols ("Receiver Echols") as the receiver for the defendants in the Lawsuit, including Z. Patel and PNP.

22.

The Court also granted a seizure warrant that froze the assets and bank accounts belonging to the defendants in the case, including a 2019 BMW X7 owned by Z. Patel, jewelry owned by Z. Patel, and bank accounts in the names of Z. Patel and PNP.

23.

On or about July 19, 2019, Z. Patel, individually, PNP (by Z. Patel, manager), M. Patel, individually, Krishna (by M. Patel, president), and two other defendants hired Kushner and the Firm to represent them in the Lawsuit.

24.

Z. Patel, individually, PNP (through Z. Patel as its manager), M. Patel, individually, Krishna (through M. Patel as its president), and two other defendants in the Lawsuit executed a single fee agreement with the Firm (the "Fee Contract") wherein Kushner was to be the attorney principally responsible for the matter.

25.

Despite representation of numerous joint defendants in a RICO / forfeiture action, the Fee Contract signed by Z. Patel does not reference conflicts.

5

26.

From the time of the execution of the Fee Contract through the final resolution of the Lawsuit, neither Kushner nor anyone on behalf of the Firm advised Z. Patel or PNP of potential conflicts of interest associated with the joint representation of the defendants in the Lawsuit.

27.

On August 6, 2019, Kushner filed a single "Limited or Special Answer, Defenses and Claims to Property" (the "Answer") on behalf of Krishna, PNP, M. Patel, Z. Patel, Bhunica Ambu ("Ambu") and Booray Group, LLC ("Booray").

28.

Z. Patel verified the Answer for herself and for PNP; M. Patel verified the Answer for himself and Krishna; and Ambu verified the Answer for herself and Booray.

29.

During all times that Kushner and the Firm represented Z. Patel and PNP, Kushner knew that Z. Patel was the manager and sole member (owner) of PNP. Kushner also knew that Z. Patel was the only individual with authority to make decisions for PNP.

30.

In hearings and court filings made with respect to the Lawsuit, Kushner repeatedly represented and confirmed that PNP was a separate legal entity and that Z. Patel was the sole member of PNP. For example, in an August 30, 2019 motion response, Kushner wrote, "Mr. Patel's wife, Zankhana Patel, is the sole member of PNP Amusement, LLC." Similarly, Kushner included an affidavit drafted by him in a January 28, 2020 filing in which Z. Patel declares "I am the manager and sole member of PNP Amusement Games, LLC."

31.

At no time did Kushner nor the Firm obtain an agreement among M. Patel, Krishna, Z. Patel, PNP, Ambu, and Booray setting forth those clients' agreement regarding any distribution of funds recovered in the Lawsuit.

32.

On or about January 22, 2020, the defendants in the Lawsuit and the state of Georgia reached a settlement agreement.  The terms of that settlement were incorporated into a Consent Order, filed with the Court on February 28, 2020 (the "Consent Order").

33.

Even though Kushner and the Firm presented evidence that Z. Patel, PNP, M. Patel, Krishna, Ambu, and Booray claimed and sought different amounts of money, the Consent Order does not specify the specific amounts of money to be paid to each of the defendants represented by Kushner and the Firm.

34.

Z. Patel signed the Consent Order individually and as the representative for PNP.

35.

The Consent Order, among other things, directed Receiver Echols to distribute half of the remaining cash in the accounts of Booray, Krishna, and PNP into the Firm's trust account (the "IOLTA") and ordered Receiver Echols to sell some of the defendants' assets, which included PNP's (1) Master License, (2) COAMs, and (3) COAM lease agreements, within sixty (60) days.

36.

With the exception of the funds generated from a later collective sale of the defendants'
assets, at all times relevant it appears that Receiver Echols kept the defendants' assets, including
the assets of PNP and Z. Patel, separate from those of the other defendants in the Lawsuit.

37.

Pursuant to the Consent Order, Receiver Echols made distributions of money owned by
Krishna, PNP, and Booray via checks (the "Initial Checks") as shown below.  All such funds
were deposited into the Firm's IOLTA:

    a.       On or about March 9, 2020, a cashier's check for "PNP Disbursement" in the
amount of $453,373.87 and a cashier's check for "Krishna Disbursement" in the
amount of $204,893.15;

    b.       On or about June 5, 2020, a check for "PNP Disbursement" in the amount of
$91,127.63, a check for "Krishna Disbursement" in the amount of $36,801.88,
and a check for "Booray Disbursement" in the amount of $40,641.47;

    c.       On or about July 9, 2020, a check for "PNP Disbursement" in the amount of
$94,880.87, a check for "Krishna Disbursement" in the amount of $46,635.09,
and a check for "Booray Disbursement" in the amount of $64,196.65;

    d.       On or about September 11, 2020, a check for "PNP Disbursement" in the amount
of $36,869.00, a check for "Krishna Disbursement" in the amount of $24,565.00,
a check for "Booray Disbursement" in the amount of $36,051.50, and a check in
the amount of $45,073.15 for proceeds from Booray's Wells Fargo bank account;
and

8

e.    On or about June 8, 2021, a cashier's check for "PNP" in the amount of

$1,593.35, a cashier's check for "Krishna" in the amount of $1,586.33, and a

cashier's check for "Booray Disbursement" in the amount of $1,585.54.

38.

The checks sent to Kushner and the Firm by Receiver Echols for "PNP Disbursement"

and the final check identified as "PNP" were funds owed to and owned by PNP (the "PNP Initial

Payments").

39.

Upon receipt of the PNP Initial Payments, neither Kushner nor anyone else at the Firm

notified Z. Patel or PNP that the Firm received the PNP Initial Payments.

40.

The Firm deposited the PNP Initial Payments into the Firm's IOLTA.

41.

Neither Kushner nor the Firm sought or received authorization from Z. Patel or PNP with

respect to disbursements of the PNP Initial Payments.

42.

Without consent or authority from Z. Patel or PNP, Kushner and the Firm distributed the

PNP Initial Payments into an account at Ameris Bank, number "/214692" with Manoj Patel

shown as "Beneficiary."

43.

According to the Seizure Warrant filed in the Lawsuit, account #0214692 at Ameris Bank

was Krishna's account (the "214692 Krishna Account").

44.

At no time relevant to this action did Kushner or the Firm notify Z. Patel or PNP that the Firm distributed the PNP Initial Payments from the Firm's IOLTA to the 214692 Krishna Account with M. Patel shown as "beneficiary" of that account.

45.

The following amounts of the Initial Checks were wired out of the Firm's IOLTA into the 214692 Krishna Account showing M. Patel as "beneficiary:"

a.      On March 16, 2020, the Firm wired $300,000.00 and $210,933.23;

b.      On March 24, 2020, the Firm wired $17,201.00;

c.      On April 30, 2020, the Firm wired $252,185.00;

d.      On June 17, 2020, the Firm wired $168,570.98; and

e.      On July 17, 2020, the Firm wired $205,712.61.

46.

Neither Kushner nor the Firm told Z. Patel or PNP about the above-referenced disbursal wires when they were made.

47.

Pursuant to the Consent Order, Receiver Echols sold at auction the collective assets of the defendants in the Lawsuit.

48.

Despite that Receiver Echols had kept Z. Patel's and PNP's assets separate from those of the other defendants leading up to the auction, Kushner did not request that the assets of Z. Patel and PNP be auctioned separately from the assets of the other defendants in the Lawsuit.

49.

Receiver Echols compiled an inventory list of the assets being sold at auction. According to that list, the assets of Z. Patel and PNP comprised over half of the items auctioned by Receiver Echols.

50.

Specifically, a total of 206 COAMs were included in the auction. Of those, 113 were owned by Plaintiffs.

51.

PNP's assets also included its COAM Master License, which is valued at one million dollars, according to a Senior Attorney for the Georgia Lottery.

52.

Global Arcade, LLC won the auction and agreed to pay a lump sum of $11,125,000.00 for all of the defendants' assets auctioned by Receiver Echols.

53.

Receiver Echols received the auction payment from Global Arcade, LLC.

54.

On August 17, 2020, Receiver Echols disbursed $4,062,417.50 (the "August 17, 2020 Payment") to the Firm's IOLTA as payment for assets of Krishna, PNP, and Booray sold to Global Arcade, LLC. Receiver Echols did not identify what amounts were generated from the sale of the individual assets owned by each of the three corporate entities.

55.

Neither Kushner nor anyone else at the Firm demanded or requested that Receiver Echols designate the amounts of the August 17, 2020 Payment that were owned by and owed to each of the separate clients of Kushner and the Firm.

56.

Neither Kushner nor anyone else at the Firm notified Z. Patel or PNP that the Firm had received the August 17, 2020 Payment from Receiver Echols.

57.

A portion of the August 17, 2020 Payment was owned by PNP.

58.

Neither Kushner nor anyone else at the Firm made any effort to determine what portion of the August 17, 2020 Payment was owned by PNP.

59.

At no time relevant to this action did Kushner or anyone else at the Firm inquire of Z. Patel or PNP about the distribution of those portions of the August 17, 2020 Payment which belonged to Z. Patel and/or PNP.

60.

Rather, on August 18, 2020, without Z. Patel's knowledge, consent or permission, Kushner and the Firm wired $4,062,417.50 from the Firm's IOLTA to the 214692 Krishna Account showing M. Patel as "beneficiary" (the "August 18th Wire").

61.

The Wire Transfer Debit Advice for the August 18th Wire states: "Originator to Beneficiary Information: Court Order Distribution for KRISHNA PNP & Booray Sales Proceed [sic];"

62.

The August 18th Wire contained funds owned by PNP.

63.

Prior to sending the August 18th Wire, Kushner did not obtain Z. Patel's or PNP's authorization, consent, or permission to send funds owned by Z. Patel and/or PNP from the Firm's IOLTA to the 214692 Krishna Account showing M. Patel as "beneficiary" nor did Kushner or the Firm advise Z. Patel or PNP that the August 18th Wire was sent to the 214692 Krishna Account showing M. Patel as "beneficiary."

64.

At the time Kushner sent the August 18th Wire to the 214692 Krishna Account showing M. Patel as "beneficiary," Kushner did not know the location of M. Patel but was aware that M. Patel was attempting to evade arrest.

65.

Neither Kushner nor the Firm ever provided any itemized disbursal information to Z. Patel or PNP regarding the PNP Initial Payments or the August 18th Wire.

66.

On September 14, 2020, M. Patel filed for divorce from Z. Patel.

67.

After M. Patel filed for divorce, the Firm wired the following amounts of money from its IOLTA to 214692 Krishna Account showing M. Patel as "beneficiary:"

a.  $62,972.83 on September 16, 2020;

b.  $142,558.65 on September 21, 2020; and

c.  $254,000.00 on November 2, 2020.

68.

When Kushner and the Firm made each of the above-referenced disbursements from the Firm's IOLTA to the 214692 Krishna Account showing M. Patel as "beneficiary," Kushner knew that M. Patel was attempting to evade the police.

69.

Z. Patel and PNP have never received any portion of Z. Patel's or PNP's funds sent by Receiver Echols as part of the PNP Initial Payments or as part of the August 17, 2020 Payment to Kushner and the Firm and deposited into the Firm's IOLTA.

70.

As a result of the disbursals of money owned by PNP from the Firm's IOLTA into the 214692 Krishna Account showing M. Patel as "beneficiary," PNP suffered financial losses including, but not limited to:

a.  the loss of $677,844.72 sent by Receiver Echols to Defendants and allocated specifically as Plaintiffs' funds;

b.  a loss of no less than $2,728,458.88 in auction proceeds received by Defendants for the sale of Plaintiffs' assets at auction;

c.      a loss of sums paid to Kushner and the Firm in connection with the representation of Plaintiffs in the Lawsuit totaling no less than $63,587.90; and

d.      a loss of interest that would have accrued on the sums set forth above, had those funds been properly disbursed to Plaintiffs.

71.

After entry of the Consent Order, the state of Georgia released the other assets that had been seized, including the 2019 BMW X7 belonging to Z. Patel, jewelry worth in excess of $100,000.00 belonging to Z. Patel, and other valuable personal assets.

72.

Kushner and the Firm gave M. Patel the 2019 BMW X7, above-referenced jewelry, and Z. Patel's other personal assets despite knowing that they belonged to Z. Patel, without the knowledge and permission of Z. Patel.

73.

As a result of Defendants' actions in giving Z. Patel's personal assets, including but not limited to her 2019 BMW X7 and jewelry to M. Patel, Z. Patel has never been able to recover these assets and has suffered financial losses.

COUNT I

LEGAL MALPRACTICE

74.

The allegations of Paragraphs 1-73 of Plaintiffs' Complaint are incorporated by reference, as if each such allegation was fully set forth herein.

15

75.

At all times relevant to this action, an attorney-client relationship existed between Plaintiffs and Defendants.

76.

Defendants had a duty to represent Plaintiffs with that degree of skill, care and diligence ordinarily possessed and exercised by attorneys who represent clients under the same or similar circumstances in Georgia or elsewhere.

77.

Defendants' acts and omissions, as described above and as specifically set forth in the Affidavit of John Thomas Sparks, Sr., Esq., attached hereto as Exhibit "1", breached the required skill, care and diligence, constituting negligence.

78.

The deviations from the standard of care by Kushner and the Firm in their handling of the representation of Z. Patel and PNP include, but are not limited to, the following:

a.    Agreeing to represent multiple defendants in a RICO / forfeiture proceeding without initially recognizing the potential conflicts among the clients; failing to advise the clients of those potential conflicts; failing to recognize a conflict when it arose as to the clients' ownership of funds to be disbursed by Receiver Echols; failing to recognize a conflict when it arose regarding distributions of funds held in the Firm's IOLTA; failing to advise the clients regarding the conflicts; failing to seek a waiver of the conflicts; and failing to withdraw from the representation if a waiver was not or could not be obtained;

b. Failing to advise Z. Patel and PNP about the need to separate the funds to be paid to them from funds to be paid to the Firm's other defendant clients and failing to seek a requirement that all funds disbursed by Receiver Echols be identified as being owned by each specific client;

c. Failing to notify Z. Patel that the PNP Initial Payments were received and deposited into the Firm's IOLTA and failing to seek instructions from Z. Patel as to how the PNP Initial Payments were to be disbursed;

d. Wiring portions of the PNP Initial Payments owned by PNP to the 214692 Krishna Account showing M. Patel as "beneficiary" without Z. Patel's and/or PNP's knowledge or permission to do so;

e. Failing to determine how much of the August 17, 2020 Payment was owned by each of their clients, including PNP; and

f. Wiring portions of the August 17, 2020 Payment which were owned by PNP to the 214692 Krishna Account showing M. Patel as "beneficiary" without Z. Patel's and/or PNP's knowledge or permission to do so.

79.

These deviations from the standard of care solely and proximately caused injury to Plaintiffs.

COUNT II

BREACH OF FIDUCIARY DUTY

80.

The allegations of Paragraphs 1-73 of Plaintiffs' Complaint are incorporated by reference, as if each such allegation was fully set forth herein.

81.

Due to the attorney-client relationship, Defendants owed certain fiduciary duties to Z. Patel and PNP.

82.

Kushner and the Firm represented several defendants in the Lawsuit, including Z. Patel, PNP, M. Patel, Krishna, and Booray. Despite this, Defendants did not advise Z. Patel and/or PNP of potential conflicts of interest inherent in representing numerous parties in a RICO / forfeiture action, nor did they give Plaintiffs the opportunity to waive such potential conflicts.

83.

During the representation, an actual conflict arose, insofar as M. Patel apparently asserted a claim to Plaintiffs' funds. Defendants did not advise Plaintiffs of this conflict, nor did Defendants retain the funds in their IOLTA until the issue was resolved.

84.

Additionally, Defendants failed to advise Z. Patel and/or PNP when they received Plaintiffs' funds from Receiver Echols.

85.

Instead, Defendants disbursed Plaintiffs' funds to M. Patel without advising Z. Patel and/or PNP they had received such funds and without Plaintiffs' knowledge or permission, thereby acting in a manner which favored their client M. Patel, to the detriment of Z. Patel and PNP.

86.

Defendants also gave Z. Patel's BMW X7, her jewelry, and Z. Patel's other personal asset to M. Patel without Z. Patel's knowledge or permission to do so.

87.

Defendants above-described actions constitute breaches of fiduciary duties, specifically including those duties evidenced by Georgia Rules of Professional Conduct 1.1, 1.4, 1.7 and 1.15.

88.

Defendants' breaches of fiduciary duties solely and proximately caused damage to Z. Patel and PNP.

89.

Plaintiffs have attached hereto the Affidavit of John Thomas Sparks, Sr. Esq., an expert competent to testify as to the acts and omissions of Defendants which constituted breaches of fiduciary duty.

## COUNT III

## BREACH OF CONTRACT

90.

The allegations of paragraphs 1-73 of Plaintiff's Complaint are incorporated by reference, as if each such allegation was fully set forth herein.

91.

On July 19, 2019, Plaintiffs entered into the written Fee Contract for legal representation with Defendants, with Z. Patel signing individually and as Manager of PNP.

92.

In the Fee Contract, Defendants agreed to represent Z. Patel and PNP in connection with the Lawsuit.

93.

The Fee Contract included an implied covenant of good faith and fair dealing.

94.

Defendants failed to provide competent services as required by the Fee Contract, specifically by failing to advise their clients of a conflict of interest in the representation, failing to advise Z. Patel and/or PNP that they had received funds owned by Plaintiffs, and disbursing Z. Patel's and PNP's funds to another client without Plaintiffs' knowledge or permission. Through these actions, Defendants breached the Fee Contract.

95.

Defendants also failed to act in good faith in their representation of Z. Patel and PNP when they disbursed Plaintiffs' funds to M. Patel without Plaintiffs' knowledge or consent.

96.

Defendants' breaches of the Fee Contract caused damages to Plaintiffs, for which Defendants are liable.

97.

Defendants' breach of contract entitles Plaintiffs to interest on their damages, as set forth in O.C.G.A. § 13-6-13.

## COUNT IV

## PUNITIVE DAMAGES

98.

The allegations of the foregoing paragraphs of Plaintiffs' Complaint are incorporated by reference, as if each such allegation was fully set forth herein.

99.

Defendants' actions, as set forth above, show willful misconduct, wantonness and that entire want of care which raises the presumption of a conscious indifference to the consequences of their acts. Accordingly, Plaintiffs seek punitive damages pursuant to O.C.G.A. § 51-12-5.1.

COUNT V

ATTORNEY'S FEES AND EXPENSES

100.

The allegations of the foregoing paragraphs of Plaintiffs' Complaint are incorporated by reference, as if each such allegation was fully set forth herein.

101.

Defendants acted in bad faith, entitling Plaintiffs to recover their expenses of litigation, including reasonable attorney's fees, pursuant to O.C.G.A. § 13-6-11, in amounts to be determined at the trial of this case.

WHEREFORE, Plaintiffs respectfully demand:

(a)  That Summons issue requiring Defendants to be and appear in this Court within the time provided by law to answer this Complaint;

(b) Judgment against Defendants for compensatory damages and punitive damages, plus attorney's fees, expenses and costs of Court;

(c)  That all issues raised in this Complaint be tried before a jury; and

(d)  For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury to try all issues triable by a jury.

This the 16 day of May, 2024.

Respectfully submitted,

Michael J. Warshauer
State Bar No. 018720
Linley Jones
State Bar No. 403045
Angela M. Forstie
State Bar No. 940654
Attorneys for Plaintiffs

Warshauer Woodward Atkins, LLC
2740 Bert Adams Road NW
Atlanta, Georgia 30339
(404) 492-4900
mjw@warlawgroup.com

The Linley Jones Firm, P.C.
3334 Peachtree Road NE
Suite CU-2
Atlanta, Georgia 30326
(404) 418-0000
linley@linleyjones.com
angela@linleyjones.com