**Medmarc Insurance Group**
4795 Meadow Wood Lane
Suite 335 West
Chantilly, VA 20151

800.366.6886 ◆ Fax 703.652.1389
www.medmarc.com

**MEDMARC.**
Treated Fairly

A ProAssurance Company

March 15, 2024

D. Garrett Anderson, Esq.
Bovis, Kyle, Burch & Medlin, LLC
200 Ashford Center North, Suite 500
Atlanta, GA 30338

Re:    Insured:  Fellows Labriola, LLP
       Policy No: 21MCGA000028
       Claim No:  21LM00356

Dear Mr Anderson:

This letter is written in response to your request for certain information addressed to Medmarc Casualty Insurance Company.

A. The name of the insurer:  Medmarc Casualty Insurance Company
B. The name of each insured: Fellows Labriola, LLP
C. The limits of liability coverage: $5,000,000 each Claim and $5,000,000 in the aggregate
D. A statement of any policy or coverage defense which such insurer reasonably believes is available to such insurer at the time of filing such statement:

   At this point in time, Medmarc has insufficient information upon which to form a belief as to policy or coverage defenses.

E. A copy of the policy:
   A certified copy of the policy is attached.

By copy of this letter to Agency Marketing Services, we ask that Debbie Back, insurance broker respond to your request to disclose the name and coverage of each known insurer to you and to forward such request for information as required by the appropriate statute to all affected insurers.

Please direct any further inquiries regarding this matter to the assigned Claims Specialist, Misti Tweeddale.

Very truly yours,

*Richard Butler*

Richard Butler

Medmarc Casualty Insurance Company ◆ Noetic Specialty Insurance Company ◆ Hamilton Resources Corporation

I, Richard Butler, depose and say that the foregoing answers to the Disclosure of Insurance Policy Limits are true and correct to the best of my knowledge or belief.

SIGNATURE:  *Richard Butler*                DATE: 03/15/24

Commonwealth of Virginia

County of Fairfax

BEFORE ME, the undersigned authority, personally appeared Richard Butler, who being duly sworn, deposes and says that the foregoing answers to the Disclosure of Insurance Policy Limits pursuant to Florida Statute 627.4137 are true and correct to the best of his/her knowledge, information or belief.

SWORN TO AND SUBSCRIBED before me this 15th day of March, 2024.

*Kristin E. Encarnacion*

Notary Public, Commonwealth of Virginia

X Personally known by me; or

☐ Produced identification: _____

                    Type of identification provided

MY COMMISSION EXPIRES:

> Kristin E. Encarnacion
> NOTARY PUBLIC
> REGISTRATION # 7072334
> COMMONWEALTH OF VIRGINIA
> MY COMMISSION EXPIRES 11/30/2027

cc:

Debbie Back
Agency Marketing Services
9800 4th Street North, Suite 400
St.Petersburg, FL 33702





**LAWYERS PROFESSIONAL LIABILITY INSURANCE**
**POLICY DECLARATIONS**

**Policy Number**

21MCGA000028

**Issuing Company**

Medmarc Casualty Insurance Company
4795 Meadow Wood Lane, Suite 335 West
Chantilly, VA 20151
(A Stock Company)

**1   Named Insured and Address**

Fellows LaBriola LLP
225 Peachtree Street, NE, Suite 2300
Atlanta, GA 30303

**2   Policy Period**

Effective Date: 2/8/2021
Expiration Date: 2/8/2022

12:01 A.M. Standard Time at the address
of the Named Insured as stated herein.

**3   Retroactive Date**

Full Prior Acts

Unless indicated otherwise in an
Endorsement attached to this **policy**

**4   Limit of Liability**

| | |
|---|---|
| $5,000,000.00 | Each Claim |
| $5,000,000.00 | Aggregate |

**5   Deductible**

| | |
|---|---|
| $10,000.00 | Each Claim |
| $10,000.00 | Aggregate |

**6   Premium**

**7   Fees (if applicable)**

Issue Date: 01/22/2021



**LawyerCare® Professional Liability Policy**
**For Lawyers and Law Firms**
**Claims-Made Form**

This is a Claims Made and Reported Policy. Subject to all its terms and conditions, this **policy** applies only to those **claims** that are both first made against an **Insured** and reported to the **Company** during the **policy period** or an extended reporting period.

**SECTION 1. DEFINITIONS**

**Claim** means a demand or suit for **damages** received by the **Insured**, including any arbitration proceedings to which the **Insured** is required to submit or to which the **Insured** has submitted with the **Company's** consent.

**Claim expense(s)** means all expenses incurred by or with the written consent of the **Company** in the investigation, adjustment, defense, or appeal of a **claim**, including but not limited to fees charged by a lawyer, mediator, or arbitrator; costs taxed against an **Insured** for a **claim** covered by this **policy**; interest on that part of any covered judgment that does not exceed the applicable limit of liability; and commercially reasonable premiums on appeal bonds, the principal amount of which shall not exceed the applicable limit of liability (but the **Company** shall have no obligation to apply for, guarantee, or furnish such bonds). **Claim expenses** do not include salaries and benefits of employees or officials of the **Company**, or supervisory counsel retained by the **Company**, nor the cost of providing a defense for grievance hearings or disciplinary proceedings of any kind.

**Company** means the insurance company shown in the Declarations and its successors or assigns.

**Continuous coverage effective date** means the effective date of the earliest **policy** issued by the **Company** to the **Insured** that is followed by a continuous and unbroken period in which the **Company** provided professional liability insurance coverage to the **Insured**.

**Damages** means monetary judgments, awards, or settlements, but does not include (a) the return or restitution of legal fees, costs, and expenses charged by the **Insured**; (b) any client funds allegedly misappropriated, whether by an **Insured** or any other person, and whether intentionally or not, or interest thereon; or (c) fines, sanctions, penalties, punitive damages, exemplary damages, or any award resulting from the multiplication of compensatory damages, imposed against any **Insured**, any client of an **Insured**, or any other person or entity.

**Employment practices** means those practices of any **Insured** alleged to have involved discrimination, harassment, wrongful termination, wrongful failure to hire or promote, or any other violation of federal or state employment laws.

**Formal mediation** means the voluntary process by which a qualified professional mediator, chosen by parties to a **claim** with consent of the **Company**, meets with and intercedes between the parties in an attempt to resolve the **claim**. **Formal mediation** does not include litigation, facilitation, arbitration, or any court-mandated or court-imposed mediation.

**Insured** means (1) the **Named Insured**; or (2) any **Predecessor Firm**; or (3) any lawyer who is a partner, limited liability partner, limited liability company member, officer, director, stockholder, employee, or independent contractor of the **Named Insured**, solely while acting in a professional capacity on behalf of the **Named Insured** or any **Predecessor Firm**; or (4) any lawyer who was a partner, limited liability partner, limited liability company member, officer, director, stockholder, employee, or independent contractor of the **Named Insured** or any **Predecessor Firm**, solely while acting in a professional capacity on behalf of the **Named Insured** or any **Predecessor Firm**; or (5) any non-lawyer who was or is an employee of the **Named Insured** or any **Predecessor Firm**, solely while acting within the scope of their employment on behalf of the **Named Insured** or any **Predecessor Firm**; or (6) any past or present "of counsel" lawyer, solely while acting in a professional capacity on behalf of the **Named Insured** or any **Predecessor Firm**; or (7) the heirs, assigns, and legal representatives of an **Insured** in the event of the **Insured's** death, incapacity, or bankruptcy, to the extent that the **Insured** would have been covered.

**Investment advice** means giving advice regarding the value of an investment; or recommending investment in, purchase of, or sale of a particular investment; or managing any investment; or buying or selling any investment for another; or acting as a broker for a borrower or lender; or performing economic analysis of any investment; or inducing others to make a particular investment; or giving advice where the compensation for such advice is contingent upon the performance of a particular investment.

**Named Insured** means the firm or individual lawyer shown in Item 1 of the Declarations and any **Predecessor Firm**.

**Personal injury** means false arrest, detention, or imprisonment; or wrongful entry, eviction, or other invasion of private occupancy; or malicious prosecution; or the publication or utterance of libel, slander, or other defamatory or disparaging material; or a publication in violation of a person's right of privacy; and involving the rendering of or failure to render **professional services** by an **Insured**.

**Policy** means this policy form, the Declarations, and any endorsement to this policy issued by the **Company**.

**Policy period** means the period from the effective date of this **policy** to the expiration date or earlier termination date of this **policy**.

**Predecessor Firm** means the legal entity or sole proprietorship that was engaged in the practice of law to whose financial assets and liabilities the **Named Insured** is the majority successor in interest.

**Professional services** means services rendered by an **Insured** as a provider of legal services in a lawyer-client relationship.  **Professional services** shall also include activities of an **Insured** as a mediator, arbitrator, title insurance agent, notary public, administrator, conservator, receiver, executor, guardian, or trustee, or in any similar fiduciary capacity, or as a member of a formal accreditation, ethics, peer review, licensing, standards review, bar association, or similar professional board or committee, or as an author, publisher, or presenter of legal research.

**Retroactive Date** means the date shown in Item 3 of the Declarations or in any endorsement attached hereto.


## SECTION 2.  COVERAGE

### 2.1.  WHAT THIS POLICY INSURES

**2.1.1.**  The **Company** will pay on behalf of the **Insured** all sums up to the Limit of Liability shown in Item 4 of the Declarations and in excess of the Deductible amount shown in Item 5 of the Declarations that the **Insured** shall become legally obligated to pay as **damages** because of any **claim** or **claims**, including **claim(s)** for **personal injury**, first made against the **Insured** and first reported to the **Company** during the **policy period**, involving any act, error, or omission in rendering or failing to render **professional services** by the **Insured** or by any person for whose acts, errors, or omissions the **Insured** is legally responsible, provided that the act, error, or omission first occurred on or after the **Retroactive Date** and that no **Insured** knew or should have known of facts that reasonably could have been expected to result in a **claim** prior to the effective date of this **policy**.

**2.1.2.**  An act, error, or omission that is continuing in nature shall be deemed to have occurred only on the date on which that act, error, or omission or series of related acts, errors, or omissions began and not on any subsequent date. Related acts, errors, or omissions shall be deemed to have occurred on the date that the earliest of such acts, errors, or omissions began.

### 2.2.  WHEN A CLAIM IS FIRST MADE

A **claim** is first made against the **Insured** at the earlier of the following:

a)   when the **Insured** first receives written notice that a **claim** has been made; or

b)  when the **Insured** first receives information of specific circumstances involving a particular person or entity that could reasonably be expected to result in a **claim** (however, this paragraph does not apply during the Limited Automatic Reporting Period provided in Section 6.1).

All **claims**, including **claims** for **personal injury**, involving a single act, error, or omission or a series of related acts, errors, or omissions shall be deemed to be one **claim** and to be first made when the first of such **claims** is made.

### 2.3.  WHEN A CLAIM IS FIRST REPORTED

A **claim** is first reported to the **Company** at the earlier of the following:

a)  when the **Company** first receives notice from the **Insured** that a **claim** has been made; or

b)  when the **Company** first receives notice from the **Insured** of the specific circumstances involving a particular person or entity that could reasonably be expected to result in a **claim**.

Any **claim** involving the same, related, or continuing **professional services** that resulted in a **claim** prior to the first **policy** issued to the **Named Insured** by the **Company**, whether or not the **claim** was reported to any prior insurer, is not covered under this **policy**.

### 2.4.  TERRITORY

This **policy** applies, subject to the terms and conditions herein, to acts, errors, or omissions occurring anywhere in the world, provided that the **claim** is made and the suit is brought within the United States of America, its territories, Puerto Rico, or Canada.

### 2.5.  PRIOR ACTS COVERAGE FOR INDIVIDUAL LAWYERS

If the **Retroactive Date** shown for any individual lawyer in the Schedule of Lawyers Endorsement precedes the date on which the lawyer became a partner, limited liability partner, limited liability company member, officer, director, stockholder, or employee of the **Named Insured** or any **Predecessor Firm**, the individual lawyer is an **Insured** for (1) **claims** resulting from the rendering of, or failure to render, **professional services** on behalf of the **Named Insured** or any **Predecessor Firm** and (2) **claims** resulting from the rendering of, or failure to render, **professional services** on or after the individual lawyer's **Retroactive Date** and prior to the date that he or she joined the **Named Insured** or any **Predecessor Firm**.

### SECTION 3.  DEFENSE AND SETTLEMENT

### 3.1.  DUTY OF DEFENSE

The **Company** has the right to investigate and settle **claims**, and the **Company** will defend, subject to the Limit of Liability shown in Item 4 of the Declarations and as explained in Section 5, any suit or arbitration seeking **damages** against the **Insured** to which this **policy** applies. Once the **Company** has paid the Limit of Liability:

a)  the **Company** will not be obligated to pay any further **damages** or expense; and

b)  the **Company** will not be obligated to undertake or continue the defense or investigation of any **claim** or suit.

### 3.2.  CONSENT TO SETTLE

The **Company** will not settle a **claim** without the consent of the **Named Insured**, unless:

a)  the **Named Insured** cannot be located and contacted after reasonable efforts are made by the **Company**; or

b)   the settlement is made after a verdict or judgment has been rendered against an **Insured**.

The **Named Insured** agrees not to unreasonably withhold such consent.

## 3.3. REPRESENTATION

The **Company** has the right to select defense counsel in any **claim** defended under the **policy**. The **Named Insured** may request representation by a lawyer or law firm on the **Company's** list of approved lawyers, and such request, if reasonable, will be honored by the **Company**.

## SECTION 4.  EXCLUSIONS

### 4.1.  WHAT THIS POLICY DOES NOT INSURE

This **policy** does not apply to:

a)   any **claim** involving willful wrongdoing or any dishonest, criminal, malicious, or fraudulent act, error, or omission by any **Insured**, provided, however, that the **Company** will defend any **claim** alleging liability excluded by this paragraph until such time as the **Insured** is adjudged to be liable to pay because of such conduct or is adjudged to have committed, or pleads guilty to, an act, error, or omission described in this paragraph. The **Company** will not indemnify an **Insured** for any **damages** the **Insured** is adjudged to be liable to pay because of such conduct;

b)   any **claim** made by or against any entity not named in the Declarations in which any **Insured** is a ten percent (10%) or more owner, partner, member, principal, or stockholder; or in which any **Insured** is an employee; or that is directly or indirectly controlled, operated, or managed by any **Insured**;

c)   any **claim** made against any **Insured** involving any **Insured's** activities as an owner, partner, officer, director, member, principal, stockholder, employee, or independent contractor of an entity (other than a prior law firm) not named in the Declarations;

d)   any **claim** involving any **Insured's** activities as a public official or employee of a governmental body, subdivision, or agency, except that this exclusion does not apply to any **Insured** who rendered **professional services** to a governmental body, subdivision, or agency solely in the capacity of retained outside counsel;

e)   any **claim** involving any **Insured's** activities and/or capacity as a fiduciary under the Employee Retirement Income Security Act of 1974, its amendments, and any regulation or order issued pursuant thereto, except if an **Insured** is deemed to be a fiduciary solely because of legal advice that was or should have been rendered with respect to an employee benefit plan;

f)   any **claim** involving a public offering or sale, registration, or qualification of securities under any federal, state, or local law, rule, or regulation, including, without limitation, the Securities Act of 1933, as amended, the Securities Act of 1934, as amended, and any and all rules and regulations promulgated under any or all of the foregoing laws;

g)   any **claim** of any type whatsoever based upon the **employment practices** of any **Insured**, except as provided in Section 5.8;

h)   any **claim** for bodily injury, physical injury, sickness, disease, mental or emotional distress, or death of any person, or injury to or destruction of any tangible property or loss of use resulting therefrom;

i)   any **claim** involving the rendering of or failure to render **investment advice**;

j)   any **claim** involving sexual contact or conduct or the threat of sexual contact or conduct by any **Insured**;

k)   any **claim** made against, or loss sustained by, any **Insured** as a beneficiary or distributee of any trust or estate;

l)  any **claim** made by any **Insured** against another **Insured** that does not involve **professional services** that were or should have been rendered by such other **Insured** to the first **Insured** in a lawyer-client relationship existing between them;

m)  any **claim** involving the liability of another person or entity that any **Insured** assumes through a written or oral agreement, provided that this exclusion shall not apply to any liability that would be imposed on the **Insured** by law in the absence of the written or oral agreement;

n)  any **claim** involving any **Insured's** activities as a Certified Public Accountant, Insurance Broker or Agent, or Real Estate Broker or Agent;

o)  any **claim** for fines, sanctions, penalties, punitive damages, exemplary damages, or any award resulting from the multiplication of compensatory damages imposed against any **Insured**, any client of an **Insured**, or any other person or entity;

p)  any **claim** involving a certificate or acknowledgement of signature notarized by any **Insured** without the physical appearance or proof of identity of the signatory;

q)  any **claim** involving discrimination by any **Insured** on the basis of race, creed, age, sex, marital status, national origin, height, weight, disability, sexual preference, or any other discrimination prohibited by law;

r)  any **claim** involving any act, error, or omission in rendering or failing to render **professional services** during any time the **Insured's** license to practice his or her profession has been suspended, revoked, or voluntarily surrendered;

s)  any **claim**, disciplinary action, or other legal action involving any circumstance, act, error, or omission (1) disclosed in the information and representations made by the **Insured** in connection with the application submitted to the **Company** prior to the **continuous coverage effective date**; (2) reported to another insurance carrier prior to the **continuous coverage effective date**; or (3) that occurred prior to the **continuous coverage effective date**, if on that date, the **Insured** knew or believed, or had reason to know or believe, that the circumstance, act, error, or omission might reasonably be expected to result in a **claim**, disciplinary action, or other legal action against the **Insured**; and

t)  any **claim** or other request involving or relating to any conversion, improper commingling, or misappropriation, whether by an **Insured** or any other person, and whether intentionally or not, of client funds or trust account funds or funds of any other person held by any **Insured** in any capacity.

## 4.2.  INNOCENT INSUREDS

**4.2.1.**  If a **claim** would be excluded from coverage under exclusion a) of Section 4.1 because it involves the dishonest, criminal, malicious, or fraudulent act, error, or omission of an **Insured**, the exclusion will not apply to any **Insured** who did not participate in, acquiesce in, or fail to take appropriate action after having knowledge of such acts, errors, or omissions, provided that such **Insured** complied with all **policy** provisions.

**4.2.2.**  If a **claim** has been concealed from the **Company** by any **Insured**, this **policy** will apply to any **Insured** who has complied with all **policy** provisions and did not participate in, acquiesce in, or fail to promptly notify the **Company** of such concealment.

The **Company** has the right to recover any **claim expenses** or **damages** paid under Section 4.2 from any **Insured** responsible for such dishonest, criminal, malicious, or fraudulent act, error, omission, or concealment.

**SECTION 5.  LIMIT OF LIABILITY**

**5.1.  LIMIT OF LIABILITY - EACH CLAIM**

**5.1.1.**  The Each Claim limit in Item 4 of the Declarations is the most the **Company** will pay for the sum of all **damages** and **claim expenses** involving a single act, error, or omission or a series of related acts, errors, or omissions, regardless of the number of **claims** made, the number of **Insureds** involved in the **claim(s)**, or the number of persons or entities making the **claim(s)**.

**5.1.2.**  The **Company** shall have the right to allocate **damages** or **claim expenses** among claimants, **Insureds**, and **policies** as the **Company** deems expedient.

**5.2.  LIMIT OF LIABILITY - AGGREGATE**

The Aggregate limit in Item 4 of the Declarations is the most the **Company** will pay for the sum of all **damages** and **claim expenses** for all **claims** first made and reported to the **Company** during the **policy period** or an extended reporting period.

**5.3.  CLAIM EXPENSE**

**Claim expenses** shall be subtracted from the Limit of Liability shown in Item 4 of the Declarations, with the remaining limit, if any, being the amount available to pay for **damages**.

**5.4.  DEDUCTIBLE**

The Deductible amounts shown in Item 5 of the Declarations apply to each **claim** and in the Aggregate for the **policy period** and are in excess of the Limit of Liability shown in Item 4 of the Declarations. The Per Claim Deductible applies to the sum of all **damages** and **claim expenses** and shall be paid by the **Named Insured** within thirty (30) days of written demand. The Aggregate Deductible amount is the most the **Named Insured** shall pay for the sum of all **damages** and **claims expenses** for all **claims** first made and reported to the **Company** during the **policy period** or an extended reporting period. In the event the **Company** in its sole discretion pays on behalf of an **Insured** all or part of the Deductible, the **Named Insured** shall reimburse the **Company** for the amount of the payment within thirty (30) days after written demand. The **Named Insured** agrees to pay all costs, including attorneys' fees and court costs, incurred by the **Company** in collecting any reimbursement.

**5.5.  MEDIATION**

If any **claim** covered under this **policy** is resolved through the use of **formal mediation** within six months from the date it is first reported to the **Company** or within ninety (90) days after suit is filed, the Deductible amount the **Named Insured** is obligated to pay will be reduced by fifty percent (50%), or by $12,500, whichever is less.

**5.6.  ATTORNEY DISCIPLINE DEFENSE**

**5.6.1.**  The **Company** shall pay up to $15,000 for the reasonable fees of an attorney assigned by the **Company**, or with the **Company's** written consent, to defend an **Insured** in an investigation or action by a bar association, disciplinary board, or other similar entity, which may restrict or rescind the **Insured's** ability to practice as a lawyer, provided that such investigation or action

a)   is first made against an **Insured** and reported to the **Company** during the **policy period**;

b)   involves acts, errors, or omissions that first occurred on or after the **Retroactive Date**;

c)   results from **professional services** that were or should have been rendered by such **Insured**; and

d)   does not involve acts, errors, or omissions for which coverage for **claims** would be excluded by Section 4.1.

**5.6.2.** The **Company** will not pay more than an aggregate total of $30,000 per **policy period** under Section 5.6.1 regardless of the number of such investigations or actions or the number of **Insureds** subject to such investigations or actions. The **Company** reserves the right in its sole discretion to determine the priority of payment under this section. Any payments made by the **Company** under Section 5.6.1 shall be in addition to the Limit of Liability shown in Item 4 of the Declarations.

**5.6.3.** In the event an **Insured** receives notice of such investigation or action, the **Insured** must:

a)  immediately give notice of the investigation or action to the **Company**; and

b)  forward every request, notice, summons, or other communication received by the **Insured** to the **Company**.

**5.6.4.** All of the terms and conditions of this **policy** shall apply with respect to the Attorney Discipline Defense provided under Section 5.6.1, except that Section 5.6.1 is not subject to any Deductible.

**5.6.5.** There shall be no extended reporting period for the coverage provided in Section 5.6.

### 5.7.  INSURED'S REIMBURSEMENT ALLOWANCE

In addition to the applicable limit of liability, the **Company** will reimburse the **Insured**, upon written request and provision of reasonable documentation, up to $500 per day and $10,000 per **policy period** for the **Insured's** loss of earnings and travel expenses due to the **Insured's** attendance, at the **Company's** request, at a trial, hearing, or arbitration proceeding involving a **claim** against the **Insured**.

### 5.8. EMPLOYMENT PRACTICES DEFENSE

**5.8.1.** The **Company** will pay up to $7,500 for the reasonable fees of an attorney assigned by the **Company**, or with the **Company's** written consent, to defend an **Insured** against **claims** involving **employment practices**, provided that such **claim**:

a)  is first made against the **Insured** during the **policy period**;

b)  is first reported to the **Company** during the **policy period**;

c)  involves acts, errors, or omissions by the **Insured** solely while acting on behalf of the **Named Insured** or any **Predecessor Firm**;

d)  involves acts, errors, or omissions that first occurred on or after the **Retroactive Date** shown in Item 3 of the Declarations;

e)  does not include any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement, unemployment, or wage or hour violation; and

f)  does not involve ownership of the **Named Insured** or any **Predecessor Firm**.

**5.8.2.** The **Company** will not pay more than an aggregate total of $15,000 per **policy period** under Section 5.8.1 regardless of the number of **claims** made, the number of **Insureds** involved in the **claim(s)**, or the number of persons or entities making the **claim(s)**. Any payments made by the **Company** under Section 5.8.1 shall be in addition to the Limit of Liability shown in Item 4 of the Declarations, and are not subject to any Deductible.

**5.8.3.** In the event an **Insured** receives notice of such **claim**, the **Insured** must:

a)  immediately give notice of the **claim** to the **Company**; and

b)  forward every request, notice, summons, or other communication received by the **Insured** to the **Company**.

**5.8.4.** This **policy** provides **employment practices** defense only as described in Section 5.8.1 above. The **Company** will not indemnify the **Insured** for any **damages** involving **employment practices**.

**5.8.5.** There shall be no extended reporting period for the coverage provided in Section 5.8.

## 5.9. SUBPOENA ASSISTANCE

**5.9.1.** The **Company** will pay reasonable attorney fees and other expenses up to $10,000 resulting from a subpoena to an **Insured** for documents or testimony involving **professional services** rendered by the **Insured**, provided that:

a) if the subpoena arises out of a lawsuit, no **Insured** is a party to the lawsuit;

b) no **Insured** has been previously engaged to provide advice or testimony as an expert or consultant in connection with the lawsuit, nor has any **Insured** provided such advice or testimony in connection with the lawsuit in the past; and

c) the subpoena is first received by an **Insured** and reported to the **Company** during the **policy period**.

**5.9.2.** The **Company** will not pay more than an aggregate total of $20,000 per **policy period** under Section 5.9.1 regardless of the number of subpoenas issued or the number of **Insureds** subpoenaed. Any notice the **Insured** gives the **Company** of such subpoena shall be deemed notification to the **Company** under Section 7.1. Such fees and expenses incurred under Section 5.9.1 shall be in addition to the Limit of Liability shown in Item 4 of the Declarations, and are not subject to any Deductible.

**5.9.3.** There shall be no extended reporting period for the coverage provided in Section 5.9.

## SECTION 6.  EXTENDED REPORTING PERIOD OPTION

### 6.1.  LIMITED AUTOMATIC REPORTING PERIOD

This **policy** shall include an automatic sixty (60) day Reporting Period, beginning at the termination of the **policy period**. During this 60-day Reporting Period, an **Insured** may report any **claim** if the **Insured** first received written notice of the **claim** during the **policy period**, provided that the **claim** is based upon an act, error, or omission in rendering or failing to render **professional services** that first occurred on or after the **Retroactive Date** and prior to the termination of the **policy period**. Paragraph b) of Section 2.2 does not apply during the 60-day Reporting Period. All other terms and conditions of the **policy** apply. The **Company** will provide coverage for **claims** first reported during the 60-day Reporting Period only if no other insurance policy provides coverage for such **claim** and if such **claim** would have been covered if reported during the **policy period**.

The Limited Automatic Reporting Period does not reinstate or increase the Limit of Liability of the **policy** or change the applicability or amount of the Deductible. The Limit of Liability applicable to **claims** reported to the **Company** during the Limited Automatic Reporting Period shall be the same Limit of Liability that would have been applicable if the **claim** had been reported to the **Company** on the last day of the **policy period**.

### 6.2.  EXTENDED REPORTING PERIOD ENDORSEMENT – NAMED INSURED

The **Named Insured** may purchase an Extended Reporting Period Endorsement if this **policy** is canceled or not renewed, or if the **Company** offers renewal under terms and conditions less favorable to the **Named Insured.**

**6.2.1.**  The Extended Reporting Period Endorsement applies only to **claims** otherwise covered by this **policy** that:

a) involve acts, errors, or omissions that occurred on or after the **Retroactive Date** and prior to the effective date of cancellation or the end of the **policy period**, whichever is applicable (hereinafter the "**Policy** Termination Date"); and

b) are first made against any **Insured** and first reported to the **Company** on or after the **Policy** Termination Date and prior to the Extended Reporting Period Expiration Date shown in the Extended Reporting Period Endorsement.

**6.2.2.**   The Extended Reporting Period Endorsement does not reinstate or increase the Limit of Liability or change the applicability or amount of the Deductible. The additional premium for the Extended Reporting Period Endorsement is a percentage of the annual premium set forth in Item 6 of the Declarations, and the **Named Insured** may select from the following options: a) 100% for a one-year period; b) 175% for a two-year period; c) 225% for a three-year period; d) 250% for a four-year period; e) 275% for a five-year period; or f) 300% for an unlimited duration. At the effective date of the Extended Reporting Period Endorsement, the premium is deemed fully earned. The **Company** may not cancel the Extended Reporting Period Endorsement except for nonpayment of premium.

**6.2.3.**   The **Named Insured** may purchase the Extended Reporting Period Endorsement subject to the following conditions:

a)   any premium and Deductible amounts due the **Company** must be paid by the **Named Insured**;

b)   the **Named Insured** must notify the **Company** in writing and pay the premium due for the Extended Reporting Period Endorsement within sixty (60) days after the **Policy** Termination Date; and

c)   when the Extended Reporting Period Endorsement is purchased, the endorsement replaces the Limited Automatic Reporting Period (Section 6.1).

## 6.3.   EXTENDED REPORTING PERIOD ENDORSEMENT – INDIVIDUAL INSURED

An **Insured** lawyer may purchase an Individual Extended Reporting Period Endorsement by requesting such coverage in writing within sixty (60) days after leaving the **Named Insured** firm.

**6.3.1.**   The Individual Extended Reporting Period Endorsement applies only to **claims** otherwise covered by this **policy**:

a)   involving acts, errors, or omissions of the individual **Insured** that occurred on or after the **Retroactive Date** and prior to the Individual Extended Reporting Period Effective Date shown in the Individual Extended Reporting Period Endorsement; and

b)   first made against the individual **Insured** and first reported to the **Company** on or after the Individual Extended Reporting Period Effective Date and prior to the Individual Extended Reporting Period Expiration Date shown in the Individual Extended Reporting Period Endorsement.

**6.3.2.**   An **Insured** lawyer may purchase the Individual Extended Reporting Period Endorsement with a Limit of Liability equal to that shown in Item 4 of the Declarations as of the Individual Extended Reporting Period Effective Date. The Deductible amount shown in Item 5 of the Declarations shall not apply to **claims** made under this endorsement. The additional premium for the Individual Extended Reporting Period Endorsement is calculated as a percentage of the **Insured** lawyer's annual premium at the effective date of the **policy period**. The **Insured** lawyer may purchase the Individual Extended Reporting Period Endorsement from the following options: a) 100% for a one-year period; b) 175% for a two-year period; c) 225% for a three-year period; d) 250% for a four-year period; e) 275% for a five-year period; or f) 300% for an unlimited duration. At the effective date of the Individual Extended Reporting Period Endorsement, the premium is deemed fully earned. The **Company** may not cancel the Individual Extended Reporting Period Endorsement except for nonpayment of premium.

**6.3.3.**   An **Insured** lawyer may purchase an Individual Extended Reporting Period Endorsement by notifying the **Company** in writing and paying the premium due for the Individual Extended Reporting Period Endorsement within sixty (60) days after leaving the **Named Insured** firm. When the Individual Extended Reporting Period Endorsement is purchased, the Endorsement replaces the Limited Automatic Reporting Period (Section 6.1) for the **Insured** lawyer.

## 6.4.   EXTENDED REPORTING PERIOD ENDORSEMENT - NON-PRACTICING INSURED

**6.4.1.**   A Non-Practicing Insured Extended Reporting Period Endorsement providing an unlimited extended reporting period will be issued and the premium and Deductible amounts shown in the Declarations will be waived (other than Deductible amounts the **Insured** becomes obligated to pay prior to the exercise of this provision) if an **Insured** lawyer:

a) dies;

b) becomes totally and permanently disabled and unable to engage in **professional services** as a result of accidental bodily injury, physical illness, or disease, and not involving the abuse of intoxicants or controlled substances, as certified by a physician acceptable to the **Company**; or

c) has been continuously insured with the **Company** for the immediately preceding three (3) years and is no longer engaged in **professional services** for which the **Insured** lawyer receives monetary or other financial compensation, as a result of total and permanent retirement or voluntary cessation of the full-time or part-time practice of law.

**6.4.2.** The Non-Practicing Insured Extended Reporting Period Endorsement does not extend the **policy period** or change the scope of coverage provided. The Non-Practicing Insured Extended Reporting Period Endorsement does not reinstate or increase the Limit of Liability on the **policy**. The Non-Practicing Insured Extended Reporting Period Endorsement does not provide coverage for **claims** that are covered under any other valid and collectible insurance, whether issued by the **Company** or any other insurer, or that would have been covered but for the exhaustion of the limit of liability of the other insurance or but for the failure of any **Insured** to comply with the terms and conditions of the other insurance.

**6.4.3.** If a Non-Practicing Insured Extended Reporting Period Endorsement is received as a result of retirement or disability and at a later date the **Insured** resumes rendering **professional services**, for any reason, in any jurisdiction, the **Insured** agrees that on that date coverage under the Non-Practicing Insured Extended Reporting Period Endorsement will terminate.

**6.5. LOSS OF LICENSE – NO AUTOMATIC OR EXTENDED REPORTING PERIOD**

If an **Insured** leaves the practice of law as a result of loss, suspension, revocation, or surrender of his or her license, the **Insured** is not eligible for the Limited Automatic Reporting Period set forth in Section 6.1 of this **policy** or any other option for an extended reporting period under Section 6 of this **policy**. If the **Insured** has a solo practice at the time the license is lost, neither the firm nor the **Insured** is eligible for the Limited Automatic Reporting Period set forth in Section 6.1 of this **policy**, and neither the firm nor the **Insured** may exercise any other option for an extended reporting period under Section 6 of this **policy**.

**SECTION 7. CLAIMS**

**7.1. NOTICE OF CLAIM**

In the event of a **claim**, the **Insured** must immediately give notice to the **Company** of the **claim** or other communication received by the **Insured** or his or her authorized representative. If the **Insured** receives information of specific circumstances involving a particular person or entity that could reasonably be expected to result in a **claim**, the **Insured** shall notify the **Company** as soon as practicable with the available information.

**7.2. ASSISTANCE AND COOPERATION OF THE INSURED**

All **Insureds** must cooperate with the **Company** for purposes of investigation and defense. An **Insured's** duty to cooperate includes but is not limited to preparing for and attending meetings, hearings, depositions, and trials and providing documents, testimony, and other evidence. An **Insured** shall not make any payment, admit any liability, waive any rights, settle any **claims**, assume any obligations, or incur any expense relating to **claims** reported under this **policy** without the prior written consent of the **Company**.

**7.3. SUBROGATION**

The **Company** will be subrogated to any **Insured's** rights of recovery to the extent of any payment under this **policy**. An **Insured** will do whatever is necessary to secure such rights and will do nothing to prejudice these rights. The **Company** will not exercise any such rights to recover from any **Insured** under this **policy**, except as stated in Section 4.2.

**SECTION 8.  CONDITIONS**

**8.1.  ACTION AGAINST THE COMPANY**

**8.1.1.**  No action shall lie against the **Company** unless:

a)  all **Insureds** have complied in full with all of the terms of this **policy**; and

b)  the amount of all **Insureds'** obligations to pay has been finally determined by judicial disposition, including any appeals, or by written agreement of the **Named Insured**, the claimant, and the **Company**.

**8.1.2.**  No person or entity may join the **Company** as a party to any action against any **Insured** to determine any **Insured's** liability under this **policy**. Bankruptcy or insolvency of any **Insured** or any **Insured's** estate will not relieve the **Company** of any of the **Company's** obligations under this **policy**.

**8.2.  APPLICATION AND DUTY TO SUPPLEMENT**

This **policy** has been issued in reliance upon all information and representations made by the **Insureds** and submitted to the **Company** in connection with the application. By acceptance of this **policy**, the **Named Insured** agrees that:

a)  the statements in the application are personal representations of all **Insureds** for the purposes of inducing the **Company** to issue this **policy**, and the representations were true when made and remained true through such time this **policy** was issued;

b)  this **policy** has been issued in reliance upon the truth of such representations;

c)  this **policy** embodies all of the agreements between the **Named Insured**, the **Company**, and any of the **Company's** agents; and

d)  each **Insured** shall notify the **Company** in writing within thirty (30) days of the occurrence of any one or more of the following:

    (i)    the **Insured** receives a reprimand or complaint or undergoes treatment, or is advised by a physician, Bar committee, or other licensing or professional agency to undergo treatment related to alcohol, drug, or other substance abuse;

    (ii)    the **Insured** suffers an illness or physical defect that impairs, or is likely to impair, the **Insured's** ability to practice for a period of thirty (30) days or more;

    (iii)    the **Insured** is convicted of, or pleads guilty or no contest to, any felony; or

    (iv)    the **Insured's** license to practice law is revoked, suspended, surrendered, or limited in any respect.

In the event of any such occurrence, the **Company** reserves the right to evaluate the risk and adjust the premium, re-underwrite the **policy**, or decline to continue insuring the risk.

**8.3.  CHANGES**

The terms of this **policy** shall not be changed, except by written endorsement issued and duly signed by the **Company**. Any additions to or deletions from the lawyers listed in the application must be reported to the **Company** within sixty (60) days. In the event of any such changes, the **Company** reserves the right to evaluate the risk and adjust the premium, re-underwrite the **policy**, or decline to continue insuring the risk.

**8.4.  OTHER INSURANCE**

If any **Insured** has another policy of insurance against a loss covered by this **policy**, the **Company** shall not be liable under this **policy** for a greater proportion of such loss than the applicable Limit of Liability shown in Item 4 of the Declarations bears to the total applicable limits of liability of all valid and collectible insurance against such loss; provided,

however, with respect to acts, errors, or omissions that occurred prior to the **policy period**, if any **Insured** is covered by other valid and collectible insurance against a **claim** also covered by this **policy**, the **Insured** shall not be entitled to coverage under this **policy**.

### 8.5. ASSIGNMENT

No **Insured** may assign this **policy** to any other person or entity without the written consent of the **Company**.

### 8.6. CANCELLATION OR NONRENEWAL

**8.6.1.** This **policy** may be canceled:

a) by the **Named Insured** at any time by mailing or delivering to the **Company** advance notice of cancellation, in which case the **Company** shall refund the excess of paid premium or assessment above the pro rata rates for the expired time; or

b) by the **Company** by mailing to the **Named Insured's** last known address, with postage fully prepaid:

   (i)    10 days' written notice of cancellation for nonpayment of premium or Deductible; or

   (ii)   30 days' written notice of cancellation for reasons other than nonpayment of premium; and

   (iii)  with or without tender of the excess of paid premium or assessment above the pro rata premium for the expired time.

**8.6.2.** The minimum earned premium shall be the pro rata premium for the expired time.

**8.6.3.** If the **Company** decides not to renew this **policy**, the **Company** will mail written notice to the **Named Insured** at least thirty (30) days before the expiration date. Changes in the terms available on renewal will not be considered a nonrenewal of this **policy**.

### 8.7. RENEWAL

Neither the **Company** nor the **Named Insured** has any obligation to renew this **policy**. The **Company** may offer to renew this **policy** at the terms and rates applicable at the expiration date. The **Company** will not amend the **Retroactive Date** during a period of continuous coverage.

### 8.8. CONFORMANCE TO STATUTE

Any terms of this **policy** that conflict with the statutes of the state in which this **policy** is issued are hereby amended to conform to such statutes.

### 8.9. RISK MANAGEMENT CONSULTATION; AUDIT

The **Named Insured** agrees to allow authorized representatives of the **Company** to inspect the **Named Insured's** records for the purpose of risk management consultation and to audit any information requested by the **Company** on the **Named Insured's** application for coverage. This inspection shall occur at reasonable times, as agreed to by the **Named Insured** and the **Company** representative, and shall be performed in a manner that does not breach the **Named Insured's** obligations of client confidentiality. A risk management consultation does not warrant that the **Named Insured's** practice is in compliance with any applicable statutes, rules, regulations, or professional standards, or that the practice is free from exposure to a **claim** relating to the **Named Insured's** professional liability.

### 8.10. PREMIUM PAYMENT

This **policy** shall not be effective unless the completed application has been received by the **Company** and the **Named Insured** has paid the applicable premium when due.

IN WITNESS WHEREOF, the **Company** has caused this **policy** to be signed by its President and Secretary, but this **policy** shall not be valid unless countersigned on the Declarations by a duly authorized representative of the **Company**, when required by law.

Secretary                                    President




## SCHEDULE OF ENDORSEMENTS

LCP101 - 9 /14            Policy Declarations

LCP100 - 12/14           LawyerCare Professional Liability Policy Form

LCP102 - 9 /14            Schedule of Endorsements

LCP219 - 9 /14            Schedule of Lawyers Endorsement

LCP223 - 9 /14            PracticeGuard Endorsement

LCP228 - 9 /14            Cyber Liability Basic Limits

LCP501 GA - 9 /14       Georgia State Amendatory Endorsement

Issue Date: 1/22/2021

 

## SCHEDULE OF LAWYERS ENDORSEMENT

NAMED INSURED:  Fellows LaBriola LLP

This endorsement, effective 12:01 A.M.  2/8/2021          forms a part of Policy No.  21MCGA000028

Issued by:   Medmarc Casualty Insurance Company          Endorsement No.:  0

(The attaching clause needs to be completed only when this endorsement is issued subsequent to the preparation of the **policy**.)


This **policy** is amended as follows:

Each lawyer named below shall be an **Insured** under this **policy** but only with respect to **claims** involving acts, errors, or omissions in rendering or failing to render **professional services** on or after the **Retroactive Date** specified below:


| Name | Retroactive Date |
|------|------------------|
| Derek  Schwahn | 09/30/2019 |
| Ethan M. Knott | 03/18/2019 |
| Eugenia W. Iredale | 08/23/2004 |
| Henry D. Fellows, Jr. | Full Prior |
| James M. Deichert | Full Prior |
| Michael C. Gretchen | 09/01/2015 |
| Shattuck  Ely | Full Prior |
| Stephen T. LaBriola | Full Prior |
| Steven M. Kushner | Full Prior |


All other terms and conditions of this **policy** remain unchanged.


Issue Date: 1/22/2021

 

## PRACTICEGUARD® ENDORSEMENT

NAMED INSURED:  Fellows LaBriola LLP

This endorsement, effective 12:01 A.M.  2/8/2021          forms a part of Policy No.  21MCGA000028

Issued by:   Medmarc Casualty Insurance Company          Endorsement No.:  0

(The attaching clause needs to be completed only when this endorsement is issued subsequent to the preparation of the **policy**.)

This **policy** is amended as follows:

**Section 5.  LIMIT OF LIABILITY** is amended to include:

**5.10.  PRACTICEGUARD®**

**5.10.1.  WHAT BENEFITS THIS ENDORSEMENT PROVIDES TO THE NAMED INSURED**

a)   **Total Disability of an Insured Person**

If an **Insured Person** becomes and remains **totally disabled** as a result of physical **injury** or **sickness,** the **Company** will pay a benefit of $5,000 monthly to the **Named Insured** after the **waiting period** has expired, for a period up to the **maximum benefit period** and in an amount not to exceed the **maximum endorsement benefit.** Any benefit payable for less than one month will be calculated at a daily rate of 1/30th of the monthly benefit. All benefits paid by the **Company** for **total disability** of an **Insured Person** will reduce the amount of the **maximum endorsement benefit**. The **total disability** benefit will be paid to the **Insured Person** in the event the **Named Insured** ceases active operations.

b)   **Accidental Death Benefit**

If an **Insured Person** suffers an **accidental death**, the **Company** will pay the **Named Insured** a lump sum of $50,000 less any portion of the **maximum endorsement benefit** already paid at the time of **accidental death,** not to exceed the aggregate limit of $100,000 per **policy period.**

c)   **End of Benefits**

No benefits will be provided by this endorsement after the **maximum endorsement benefit** has been paid or for any periods of **total disability** after the **maximum benefit period** has expired.

d)   **End of Coverage**

Coverage under this endorsement with respect to each **Insured Person** will end on the earliest of the following:

(i)     the date the **Insured Person** dies or is no longer employed by the **Named Insured** (except as provided for in Paragraph b) of Section 5.10.1);

(ii)    the date that there is a change of more than 50% ownership of the **Named Insured**;

(iii)    the date the **Named Insured** ceases active operation (except as provided for in Paragraph a) of Section 5.10.1); or

(iv)    the end of the **policy period**.

## 5.10.2.  DEFINITIONS

**Accidental death** means death as a result of a single, sudden, unexpected, unusual, specific event giving rise to accidental bodily harm that occurs at an identifiable time and place.

**Disability or disabled** refers to continuing periods of **total disability**.

**Doctor** means any licensed allopathic or osteopathic medicine practitioner in the United States, but only if the **doctor** is not a member of an **Insured Person's** immediate family.

**Doctor's care** means medically appropriate, regular care rendered by a **doctor** for the condition causing the **disability** and intended to return the **Insured Person** to employment.

**Injury** means accidental bodily harm or impairment that first occurs or manifests itself during the **policy period**.

**Insured Person** means a lawyer who, at the time this endorsement is issued, works 20 hours per week or more as a partner, limited liability partner, limited liability company member, officer, director, stockholder, employee, or independent contractor of the **Named Insured**.

**Maximum benefit period** means 10 months, the longest period of time for which the **Company** will pay benefits for all periods of **disability** (including all concurrent and recurrent **disabilities**) after the **waiting period** has expired.

**Maximum endorsement benefit** means the most the **Company** will pay for all periods of **disability** (including all concurrent and recurrent **disabilities**) and/or **accidental death**. The **maximum endorsement benefit** is $50,000 per **Insured Person** with an aggregate limit of $100,000 per **policy period**.

**Mental disorder and/or substance abuse disorder** means any mental and/or substance abuse disorder classified in the Diagnostic and Statistical Manual of Mental Disorders published by the American Psychiatric Association or any replacement of this Manual.

**Occupation** means the job(s) that the **Insured Person** is fit to perform because of his or her education, training, or experience.

**Pre-existing condition** means a physical injury, sickness, or other condition that, within 24 months prior to the **Insured Person** first being covered under this endorsement, caused the **Insured Person** to seek diagnosis, treatment, or consultation with, or receive medical care, treatment, services, or supplies from a **doctor** or other licensed healthcare provider or take legally prescribed medications. It also means physical injury, sickness, or other condition for which, in the 24-month period prior to the **Insured Person** first being covered under this endorsement, caused symptoms that would cause a reasonably prudent person to seek medical attention.

**Sickness** means physical infirmity or disease that gives rise to **total disability** of the **Insured Person** during the **policy period** and is not excluded due to a **pre-existing condition**.

**Total disability or totally disabled** means that, because of physical **injury** or **sickness**, the **Insured Person**, during the **policy period**, both: a) is completely unable to engage in any **occupation**; and b) is receiving **doctor's care** for the condition causing the **total disability**. The **Company** may waive this **doctor's care** requirement if the **Company** determines that the **total disability** is reasonably expected to continue for the **maximum benefit period**.

**Waiting period** means 60 days, the length of time the **Insured Person** must be **totally disabled** before the benefits will be paid under this endorsement. A new **waiting period** is required if after the end of **total disability,** the **Insured Person**, both: a) has returned to work full-time at his or her **occupation** and has performed all the primary duties of that **occupation**; and b) the later period of **total disability** begins more than 6 months after the end of the prior period of **total disability**. A new **waiting period** will also be required if the later **total disability** is due to a cause unrelated to the cause of the prior **total disability**.

Terms appearing in **boldface print** that are not defined in this endorsement have the meaning given in Section 1 of the **policy**.

### 5.10.3. EXCLUSIONS

The **Company** will not pay benefits for any **total disability** or **accidental death** that is:

a) due to an act of war, including an undeclared war;
b) due to normal pregnancy or childbirth (complications of pregnancy are covered);
c) due to an **injury** involving illegal activity by the **Insured Person**;
d) due to a **mental disorder and/or a substance abuse disorder** unless the **Insured Person** is confined for 60 consecutive days in a State-licensed mental health facility;
e) due to a self-inflicted **injury** or attempted suicide;
f) due to a **pre-existing condition**;
g) due to operating, learning to operate, or serving as a pilot or crew member of any aircraft; or
h) the result of the **Insured Person's** being under the influence of alcohol or illegal drugs; or
i) death as a result of diagnosis or treatment of a physical or mental illness or other medical treatment.

### 5.10.4. CONDITIONS

a) The **Named Insured** or an authorized representative must provide a written statement to the **Company** detailing the nature and extent of the **injury**, **sickness**, or **accidental death** for which benefits are sought within 90 days of an **accidental death** or the commencement of the **Insured Person's total disability**. In the event the **Insured Person** is legally incapacitated, the written statement must be provided within one year after the **Insured Person's total disability** commences.

b) A request for benefits shall give the **Company** the right of access to all personal medical records, tests, and reports of the **Insured Person** as may be reasonably required to confirm the **Insured Person's total disability**. Failure to provide access to the **Company** shall be deemed a waiver of right to benefits under this endorsement.

c) A request for benefits due to **accidental death** shall give the **Company** the right of access to the **Insured Person's** certified death certificate. Failure to provide access to the **Company** shall be deemed a waiver of right to benefits under this endorsement.

d)   If the **Insured Person's total disability** is reasonably expected to continue, the **Company** may require periodic written proof as a condition to paying any benefits.

e)   The **Company** may, at its own expense and as often as it may reasonably require, have a **doctor** of its choosing examine the **Insured Person** seeking benefits**. **A** Company** representative may personally interview the **Insured Person** as often as reasonably necessary as a condition of paying any benefits.

f)   If the **total disability** commences more than 24 months after the **Insured Person** first becomes continuously covered under this endorsement, the **Company** will not deny benefit for **total disability** on the basis of a **pre-existing condition**.

g)   Any payments made by the **Company** under this endorsement are in addition to the Limit of Liability in Item 4 of the Declarations and are not subject to any Deductible.

All other terms and conditions of this **policy** remain unchanged.

Issue Date: 1/22/2021

 

## CYBER RISK INSURANCE ENDORSEMENT

**NAMED INSURED**: Fellows LaBriola LLP

This endorsement, effective 12:01 A.M.  2/8/2021                   forms a part of Policy No.   21MCGA000028

Issued by:  Medmarc Casualty Insurance Company                    Endorsement No.:   0

(The attaching clause needs to be completed only when this Endorsement is issued subsequent to the preparation of the **policy**.)

This **policy** is amended as follows:

This Endorsement adds cyber risk insurance coverage to the  **policy**. <u>The following changes to the terms, conditions, and exclusions apply only to cyber risk insurance coverage and do not affect other coverages under the  **policy**</u>. All other terms, conditions and exclusions of the **policy** remain unchanged and apply in full force and effect.

1.  The Declarations of this **policy** (Form LCP101) is amended by adding the following:

    To Item 3:  Cyber Retroactive Date applicable to **claims** for **cyber injury** or **data breach expenses**:

    > 2/8/2016

    To Item 4:  Cyber Limit of Liability applicable to **claims** for **cyber injury** or **data breach expenses**
    > $25,000     Each Claim
    > $25,000     Aggregate

    To Item 5:  Cyber Deductible applicable to **claims** for **cyber injury** or **data breach expenses**
    > $2,500      Each Claim
    > N/A         Aggregate

2.  Solely with respect to the coverage provided in this Endorsement, **SECTION 1. DEFINITIONS** of this **policy** is amended as follows:

    a)  The definition of **claim** is deleted and replaced by the following:

        **Claim** means:

        (i)    a demand or suit for **damages** received by the **Insured**, including any arbitration proceedings to which the **Insured** is required to submit or to which the **Insured** has submitted with the **Company's** consent;
        (ii)   a criminal, disciplinary, administrative or regulatory proceeding commenced by the filing of a complaint or similar pleading, or in the case of a criminal proceeding the return of an indictment, information or similar document or discovery; and
        (iii)  discovery by the **Insured** of a **data breach**.

    b)  The definition of **claim expense(s)** is deleted and replaced by the following:

        **Claim expense(s)** means all expenses incurred by or with the written consent of the **Company** in the investigation, adjustment, defense, or appeal of a **claim**, including but not limited to fees charged by a lawyer, mediator, or arbitrator; costs taxed against an **Insured** for a **claim** covered by this **policy**; interest on that part of any covered judgment that does not exceed the applicable limit of liability; and c ommercially reasonable premiums on appeal bonds, the principal amount of which shall not exceed the applicable limit of liability (but the **Company** shall have no obligation to apply for, guarantee, or furnish such bonds). **Claim**

**expenses** do not include salaries and benefits of employees or officials of the **Company**, or supervisory counsel retained by the **Company**.

c)   The definition of **damages** is deleted and replaced by the following:

**Damages** means any monetary judgments, awards, fines, penalties, or settlements, including:

(i)    fines, sanctions, penalties, punitive damages, exemplary damages, or any award resulting from the multiplication of compensatory damages where insurable by law, provided that for the purposes of this provision, the law of the applicable jurisdiction most favorable to insurability of such damages shall be applied;

(ii)   sums of money the **Insured** is legally obligated to pay as an award or fund to redress affected consumers or clients due to an adverse judgment or settlement involving a regulatory or disciplinary proceeding where insurable by law, provided that for the purposes of this provision, the law of the applicable jurisdiction most favorable to insurability of such damages shall be applied; and

(iii)  fines or penalties that are owed under the terms of a merchant services agreement, but only where such fines or penalties result from **cyber injury** causing noncompliance with Payment Card Industry (PCI) Data Security Standards or similar standards.

**Damages** does not mean and shall not include:

(i)    the return or restitution of legal fees, costs, and expenses charged by the **Insured**;

(ii)   any client funds allegedly misappropriated, whether by an **Insured** or any other person, and whether intentionally or not, or interest thereon; or

(iii)  the **Insured's** future royalties or profits, restitution, disgorgement of profits by the **Insured**, or the costs of complying with orders granting injunctive relief.

d)   The following defined terms are added to this Endorsement:

**Computer system(s)** means any electronic, wireless, mobile, web, or similar systems (including all hardware and software) used to process data or information in an analog, digital, electronic, or wireless format, including but not limited to computer programs, electronic data processing media, electronic data, electronic data communications equipment, operating systems, computer network and networking equipment, firmware, servers, websites, intranet, extranet, and all input, output, processing, storage, and on-line or off-line media libraries, music, graphic, entertainment, and other content (to the extent that they hold electronic data) and electronic backup equipment.

**Confidential information** means proprietary or private information transmitted, disseminated, or stored in any manner or medium, including but not limited to:

(i)    information subject to attorney-client privilege or attorney work-product doctrine, client information, evidence, background research, legal strategies, expert materials, legal filings, contracts, agreements, and settlement documents;

(ii)   business data, commercial financial data, FEIN numbers, tax data, employment data, account numbers, account histories, passwords, security codes, competitive data, marketing data, strategies and planning data, research and development data, product data, vendor data, contractor data, and customer data;

(iii)  trade secrets, patent applications, proprietary data, designs, forecasts, formulas, methods, practices, processes, records, reports, and other non-public information; and

(iv)   data subject to a non-disclosure agreement or contractual provision that stipulates the confidentiality of data.

**Cyber injury** means any act, error, or omission resulting in any of the following:

(i)    a **data breach**;

(ii)     failure to notify or warn any person or organization of an actual or possible **data breach**;
(iii)    wrongful collection of **personally identifiable non-public information** or **confidential information**;
(iv)    failure to comply with, or a breach of, the **Insured's** written privacy policy;
(v)     violation of any regulation or law relating to (1) the collection, storage, security, use, or disposal of private information; (2) identity theft protection, remediation, or prevention; or (3) notification of actual or possible privacy breaches;
(vi)    breach of any rights of confidentiality, including a breach of any provisions of a non-disclosure agreement or breach of a contractual warranty relating to the confidentiality of data, as a result of an incident described in paragraphs (i) though (v) above;
(vii)   breach of a merchant credit card services agreement due to the **Insured's** noncompliance with published PCI Data Security Standards and caused by a **data breach**;
(viii)  the unauthorized use, alteration, corruption, destruction, deletion, damage, loss, or spoilage of data;
(ix)    the unplanned or unscheduled inability of others, who are authorized by the **Insured** to do so, to access the **Insured's computer system**;
(x)     failure of the **Insured's computer system** security to prevent transmission of a computer virus to others; or a hacker attack, denial of service attack or other computer attack against others;
(xi)    false attribution of authorship, passing off, plagiarism, piracy, or misappropriation of property rights, ideas or information involving the **Insured's** publishing or advertising; and
(xii)   infringement of copyright, mask works, domain name, trade dress, title or slogan, or the dilution or infringement of trademark, service mark, service name, or trade name involving the **Insured's** publishing or advertising.

**Data breach(es)** means theft, mysterious disappearance, unauthorized access, unauthorized use, loss, or accidental or unauthorized disclosure of **personally identifiable non-public information** or **confidential information** transmitted, disseminated, or stored in any manner, format, or medium that is in the care, custody, or control of the **Insured** or a third party that is holding, hosting, storing, maintaining, processing, disposing of, or transmitting such information on behalf of the **Insured**. A **data breach** that is continuing in nature shall be deemed to have occurred only on the date on which that **data breach** or series of related **data breaches** began and not on any subsequent date. Related **data breaches** shall be deemed to have occurred on the date that the earliest of such **data breaches** began.

**Data breach expenses** means any of the following reasonable and necessary expenses the **Insured** is either legally obligated to pay, or not legally obligated to pay, but elects to incur to mitigate damage to the **Insured's** reputation or mitigate or avoid a **claim** following a **data breach**:

(i)     cost to conduct forensics to identify the source and scope of the **data breach**;
(ii)    cost to hire legal counsel to advise on the applicability and actions necessary to comply with the **Insured's** ethical, professional, and regulatory requirements as well as identity theft, privacy, and privacy breach notification laws following a **data breach**;
(iii)   cost to hire a public relations consultant to advise on, design, implement, and execute a public relations response to a **data breach**;
(iv)    cost to notify individuals or organizations of an actual or suspected **data breach**;
(v)     cost to establish a credit monitoring service, identity theft assistance, identity theft remediation, fraud resolution, and help line for a period of up to 12 months from the date of enrollment in such services for individuals who are impacted by a **data breach**;
(vi)    cost to procure identity theft insurance for individuals who are impacted by a **data breach**; and
(vii)   cost to establish a crisis communication call center.

**Insured's computer system** means a **computer system** that is:

(i)     operated by and owned, rented, or leased by the **Named Insured**; or
(ii)    operated by third parties and used for holding, hosting, storing, maintaining, managing, transmitting, or processing on the **Named Insured's** behalf.

**Personally identifiable non-public information** means:

(i) information transmitted, disseminated, or stored in any manner or medium that allows an individual to be uniquely identified, including but not limited to an individual's name, social security number, medical or healthcare data, other protected health info rmation, driver's license number, state identification number, credit card number, debit card number, other financial account numbers, address, telephone number, IP address, email address, account number, account histories, passwords, and security codes; and

(ii) other nonpublic personal information as defined in applicable local, state, federal, or international law relating to:
    a) the collection, control, security, use, or disposal of private information;
    b) identity theft protection; and
    c) notification of actual or possible privacy breaches .

e) Terms appearing in **boldface print** that are not defined in this Endorsement have the meaning given in Section 1 of the **policy**.

## 3. WHAT BENEFITS THIS ENDORSEMENT PROVIDES

a) The **Company** will pay on behalf of the **Insured**, subject to the Cyber Limit of Liability shown in Item 4 above and in excess of the Cyber Deductible shown in Item 5 above, all sums that the **Insured** shall become legally obligated to pay as **damages** and **claims expense** because of any **claim** or **claims** involving **cyber injury**, first made against the **Insured** and first reported to the **Company** during the **policy period**, involving any act, error or omission by the **Insured** or by any person or entity for whose acts, errors, or omissions the **Insured** is legally responsible, provided that the act, error, or omission first occurred on or after the Cyber Retroactive Date shown in Item 3 above, and that no **Insured** knew or should have known of facts that reasonably could have been expected to result in a **claim** prior to the effective date of this Endorsement.

b) The **Company** will pay up to the Cyber Limit of Liability shown in Item 4 above, and in excess of the Cyber Deductible shown in Item 5 above, reasonable and necessary **data breach expenses** incurred by the **Insured** as a result of any **claim** or **claims** first discovered by the **Insured** and first reported to the **Company** during the **policy period**.

c) An act, error, or omission that is continuing in nature shall be deemed to have occurred only on the date on which that act, error, or omission or series of related acts, errors, or omissions began and not on any subsequent date. Related acts, errors, or omissions shall be deemed to have occurred on the date that the earliest of such acts, errors, or omissions began.

## 4. Solely with respect to the coverage provided in this Endorsement, **SECTION 4. EXCLUSIONS** of this **policy** is amended as follows:

a) Exclusions h), l), m) and o) are deleted from **Section 4.1 WHAT THIS POLICY DOES NOT INSURE**.

b) **Section 4.1. WHAT THIS POLICY DOES NOT INSURE** is amended to include:

u) any **claim** for bodily injury, physical injury, sickness, disease, mental or emotional distress, or death of any person, or physical injury to or destruction of any tangible property or loss of use resulting therefrom; provided that this exclusion shall not apply to emotional distress or mental anguish involving any actual or alleged **cyber injury**;

v) any **claim** made by any **Insured** against another **Insured**; provided that this exclusion shall not apply to any **claim** brought by an **Insured** against another **Insured** due to an actual or alleged **data breach**;

w) any **claim** involving the liability of another person or entity that any **Insured** assumes through a written or oral agreement, provided that this exclusion shall not apply to : (1) any liability that would be

imposed on the **Insured** by law in the absence of the written or oral agreement; or (2) a breach of the **Insured's** privacy policy;

x) any **claim** involving antitrust, restraint of trade, unfair competition, false, deceptive, or unfair business practices, violation of consumer protection laws, or deliberately false or deceptive advertising; provided that this exclusion shall not apply to any **claim** due to an actual or alleged **data breach**;

y) any **claim** involving war, invasion, acts of foreign enemies, hostilities, or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, or civil commotion assuming the proportions of or amounting to an uprising, military action, or usurped power;

z) any **claim** involving ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel, the radioactive, toxic, explosive, or other hazardous or contaminating properties of any nuclear installation, reactor, or other nuclear assembly or nuclear component thereof, or any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter;

aa) any **claim** involving infringement or misappropriation of any patent or trade secret; provided that this exclusion shall not apply to any **claim** alleging infringement or misappropriation of a trade secret due to an actual or alleged **data breach**;

bb) any **claim** involving an action brought by or on behalf of ASCAP, SESAC, BMI, or other licensing organizations in such entity's regulatory, quasi-regulatory, or official capacity, function, or duty; provided that this exclusion shall not apply to any **claim** due to an actual or alleged **data breach**; and

cc) any **claim** involving satellite failures; electrical or mechanical failures and/or interruption, including but not limited to electrical disturbance, spike, brownout, or blackout; and outages to gas, water, telephone, cable, telecommunication, or other infrastructure, unless such infrastructure is under the **Insured's** operational control.

5. Solely with respect to the coverage provided in this Endorsement, the following provisions of **SECTION 5. LIMIT OF LIABILITY** of this **policy** do not apply: **SECTIONS 5.5. MEDIATION**, **5.6. ATTORNEY DISCIPLINE DEFENSE**, **5.7. INSURED'S REIMBURESEMENT ALLOWANCE**, **5.8. EMPLOYMENT PRACTICES DEFENSE**, and **5.9. SUBPOENA ASSISTANCE**.

6. Solely with respect to the coverage provided in this Endorsement, **SECTION 6. EXTENDED REPORTING PERIOD OPTION** of this **policy** does not apply.

7. Solely with respect to the coverage provided in this Endorsement, **SECTION 7. CLAIMS** of this **policy** is amended as follows:

a) **SECTION 7.2. ASSISTANCE AND COOPERATION OF THE INSURED** of this **policy** is deleted and replaced by:

All **Insureds** must cooperate with the **Company** for purposes of investigation, mitigation, and defense. An **Insured's** duty to cooperate includes but is not limited to:

(i) preparing for and attending meetings, hearings, depositions, and trials and providing documents, testimony, and other evidence;
(ii) making employees available to prevent and mitigate **claims** or **data breaches** or circumstances that might lead to **claims** or **data breaches**; and
(iii) taking all reasonable precautions to prevent and mitigate **claims** and **data breaches** at all times.

An **Insured** shall not make any payment, admit any liability, waive any rights, settle any **claims**, assume any obligations, or incur any **data breach expense** or expense relating to **claims** reported under this **policy** without the prior written consent of the **Company**. Notwithstanding the foregoing, compliance with a data breach notice law shall not be considered as an admission of liability for the purposes of this clause.

All other terms and conditions of this **policy** remain unchanged.

Issue Date:    01/22/2021



## STATE AMENDATORY ENDORSEMENT - GEORGIA

**NAMED INSURED**:  Fellows LaBriola LLP

This endorsement, effective 12:01 A.M.  2/8/2021          forms a part of Policy No. 21MCGA000028

Issued by : Medmarc Casualty Insurance Company          Endorsement No.: 0

(The attaching clause needs to be completed only when this endorsement is issued subsequent to the preparation of the **policy**.)

This **policy** is amended as follows:

1.  **Section 4. EXCLUSIONS**, exclusion **4.1.** o) of this **policy** is deleted and replaced by the following:

   o)   any **claim** for fines, sanctions, penalties, or any award resulting from the multiplication of compensatory damages imposed against any **Insured**, any client of an **Insured**, or any other person or entity;

2.  **Section 8.6. CANCELLATION OR NONRENEWAL of** this **policy** is deleted and replaced by the following:

   **8.6.1.**  This **policy** may be canceled:

   by the **Named Insured** at any time by mailing or delivering to the **Company** advance notice of cancellation, in which case the **Company** shall refund the excess of paid premium or assessment above the pro rata rates for the expired time; or

   by the **Company** by mailing to the **Named Insured's** last known address, with postage fully prepaid:

   10 days' written notice of cancellation for nonpayment of premium or Deductible; or
   45 days' written notice of cancellation for reasons other than nonpayment of premium.

   **8.6.2.**  If the **Company** decides to cancel this **policy**, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

   **8.6.3.**  If the **Company** decides not to renew this **policy**, the **Company** will mail written notice to the **Named Insured** at least forty-five (45) days before the expiration date. Changes in the terms available on renewal will not be considered a nonrenewal of this **policy**.

3.  **Section 8.7. RENEWAL** of this **policy** is hereby deleted and replaced by the following:

   **8.7.  RENEWAL**

   Neither the **Company** nor the **Named Insured** has any obligation to renew this **policy**. The **Company** may offer to renew this **policy** at the terms and rates applicable at the expiration date. The **Company** will not amend the **Retroactive Date** during a period of continuous coverage.

If the **Company** decides to increase current **policy** premium by more than fifteen percent (15%) (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages), or to change any **policy** provision which would limit or restrict coverage, then the **Company** will mail or deliver notice of the **Company's** action (including the dollar amount of any increase in renewal premium of more than fifteen percent (15%)) to the **Named Insured**, at the address shown in the Declarations, at least forty-five (45) days prior to the expiration date of this **policy**.

All other terms and conditions of this **policy** remain unchanged.

Issue Date:1/22/2021

 

## POLICY AMENDATORY ENDORSEMENT

**NAMED INSURED**:  Fellows LaBriola LLP

This endorsement effective 12:01 A.M.   9/20/2021          forms a part of Policy No.  21MCGA000028

Issued by:  Medmarc Casualty Insurance Company          Endorsement No.: 1

(The attaching clause needs to be completed only when this endorsement is issued subsequent to the preparation of the **policy**.)

The Declarations of this **policy** (Form LCP101) is amended as follows:

An "X" placed in a box below indicates a change has been made.

1.  [    ]      The **Named Insured** is changed to:

2.  [ X ]      The **Mailing Address** is changed to:

> 233 Peachtree Street, Northeast, Suite 2400 Harris Tower
> Atlanta GA 30303

3.  [    ]      The **Policy Period** is changed to:

4.  [    ]      The **Retroactive Date** is changed to (as acknowledged by the **Named Insured**):

5.  [    ]      The **Limit of Liability** is changed to:

6.  [    ]      The **Deductible** is changed to:

7.  [    ]      The **Premium** is changed to:

8.  [    ]      The **Fees** charged is changed to:




## DELETION FROM THE SCHEDULE OF LAWYERS ENDORSEMENT

NAMED INSURED:  Fellows LaBriola LLP

This endorsement, effective 12:01 A.M.  1/26/2022         forms a part of Policy No.  21MCGA000028

Issued by:   Medmarc Casualty Insurance Company         Endorsement No.:  2

(The attaching clause needs to be completed only when this endorsement is issued subsequent to the preparation of the policy.)

This policy is amended as follows:

Each lawyer named below shall be deleted from the Schedule of Lawyers Endorsement:

| Name | Delete Date |
|---|---|
| Derek  Schwahn | 1/26/2022 |

All other terms and conditions of this **policy** remain unchanged.

Issue Date: 2/2/2022

 

**ADDITION TO THE SCHEDULE OF LAWYERS ENDORSEMENT**

NAMED INSURED:  Fellows LaBriola LLP

This endorsement, effective 12:01 A.M.  2/7/2022          forms a part of Policy No.:  21MCGA000028

Issued by:   Medmarc Casualty Insurance Company          Endorsement No.:  3

(The attaching clause needs to be completed only when this endorsement is issued subsequent to the preparation of the **policy**.)

This **policy** is amended as follows:

Each lawyer named below shall be added to the Schedule of Lawyers Endorsement as an **Insured** under this **policy** but only with respect to **claims** involving acts, errors, or omissions in rendering or failing to render **professional services** on or after the **Retroactive Date** specified below:

| Name | Retroactive Date |
|------|------------------|
| Sharika  Zutshi | 02/07/2022 |

All other terms and conditions of this **policy** remain unchanged.

Issue Date: 2/23/2022

stamps
endicia



062S0011485636

**$8.11   US POSTAGE**
**FIRST-CLASS**
Mar 15 2024
Mailed from ZIP 20151
1 OZ FIRST-CLASS MAIL FLATS RATE
ZONE 4

11923275

## USPS CERTIFIED MAIL



**9414 8118 9876 5408 8026 01**

Bovis, Kyle, Burch & Medlin, LLC
D. Garrett Anderson, Esq,
200 ASHFORD CTR N STE 500
ATLANTA GA 30338-2680

ProAssurance
4795 MEADOW WOOD LN STE 335
CHANTILLY VA 20151-2234